The court now calls case number 118058 Deshaun Nelson v. Donald Artley, Enterprise Leasing Company of Chicago, as appellant. Are you ready to proceed? Are we ready? May it please the court. Hugh Griffin on behalf of the citation respondent appellant, Enterprise Leasing Company of Chicago. I'd like to start by thanking the court for allowing us to reschedule the argument. Thank you, counsel, as well. This case asks you to do what you're asked to do a lot on your annual docket, and that is to determine the meaning of an Illinois statute. The statute in this case is Chapter 9 of the Illinois Vehicle Code, and our job, your job, if you will, is to decide the legislature's intent in enacting that statute. Now, Chapter 9 is entitled Owners for Rent of Vehicles for Hire. It applies solely to rental car companies. And what it says is, if you want to rent vehicles in the state of Illinois, you must first file proof of financial security with the Secretary of State in a minimum amount of funds to compensate injured members of the public in cases like this one, where the rental car driver was uninsured and the rental car customer did not purchase the optional liability insurance made available in the enterprise contract. The legislature posed three options, presented three options in Chapter 9 for rental car companies to comply with this requirement. Number one, the first option, file a liability insurance policy obligating the company to pay judgments against the rental car driver with limits of, minimum limits of $50,000 per person of $100,000 in an accident involving more than one person. So this case involved actually three people that were injured, so that would be the applicable limit under the insurance policy option. The second option is file a surety bond. And a surety bond requires the rental car company itself and the surety to agree to pay any judgments against the rental car driver up to $100,000. The third option, and the one that we're going to be insurance to those entities who have demonstrated sufficient financial strength and assets to obtain such a certificate. That's the third option. Now enterprise, like many rental car companies, over the years has always chosen option three. It has chosen a self-insurer to pay the same amount that an insurer would pay, $50,000 for one person, $100,000 in a case like this involving more than one person. That's its belief, and that belief was confirmed ten years ago by the 4th District in the Fellhauer versus Alhorn case. That 4th District soundly reasoned that the legislature obviously intended that the self-insurance obligation would be the same as if an insurance policy was filed and held in that case that the enterprise's obligation was $50,000. There was only one claim. That's been our understanding since then. The law has gone on for another ten years. Our contract reflects that understanding. It provides that if we are required under state law to provide minimum financial responsibility amounts, we will do that as a self-insurer. That's in the contract. We're here today because now ten years later the 1st District, with all due respect, rejected that whole concept, rejected Fellhauer, and held that if a is not limited to $50,000, $100,000, as Fellhauer soundly held, but that it's unlimited liability, and that the rental car company who files the self-insurance certificate is now liable for the full amount of the judgment, no matter how many times greater than the 1st District ultimately held that enterprise owed. Now, there's nothing in Chapter 9 that says anything like what the 1st District held. There's nothing in the self-insurance option in Chapter 9 that says a rental car company who follows that option is now that says if you file a self-insurance certificate, that means you pay the same amount as an insurer would pay if an insurance policy was So I guess at best we have, if you will, an ambiguity by silence. And to the extent there is such an ambiguity, enterprise submits that under all the canons of construction set forth in our brief, the only obvious and reasonable interpretation is that the obligation of the self-insurer is the same as it would be if an insurance policy had been filed. The first canon of construction we've got to consider is legislative acquiescence. Again, Fellhauer was decided ten years ago in 2005. Since then there's been just scores and scores of amendments to the Illinois Vehicle Code. But the legislature has never made any attempt to change Chapter 9 to express any disagreement with Fellhauer. What scant legislative history we have shows that they were aware that many, many rental car companies and other vehicle operators do self-insure. So obviously it seems to us that if they had disagreed with what the Fellhauer court held, they would have done something about it. But put that aside... The statute provides three ways to do this, as you pointed out. What's your understanding if a bond is posted, what's the liability? Is it 50-100 or is it 100? The bond is 100. And so if there's one individual, that individual could collect $100,000. If there was insurance, the individual could only collect $50,000. Right. In the Smith-Hertz statute, it's under 9105, which is the policy provision. They deal with that. What they say is you can't write a bond that way. A bond just has to be written in one amount. So clearly the legislature recognizes people are going to be treated differently depending upon whether you have insurance, a bond, or self-insurance. In that one respect, with a single claim, there could be a difference, depending on what damages were approved. But now, in this case, we have multiple claimants. In that instance, the legislature has decreed that it be consistent that there be $100,000 available. That's the requirement for insurance policies for claims of more than one. And that, of course, would be the same amount that would be available under a bond. So in this case, there's no difference. At the point you make, there could be a difference in a single claim. I think we can take judicial notice of the Illinois Administrative Code, and it provides in 92, section 1090.10, that proof of financial responsibility required by section 9-101 of the Illinois Vehicle Code may also be given by filing a certificate of self-insurance issued under section 7-502 of the Illinois Vehicle Code. Does that have any relevance to our analysis? I mean, it only has relevance in the sense that that's a way you can satisfy your obligation under Chapter 9. You're getting to the point where the 1st District, with all due respect, went off the track on this case. Chapter 7, which is 57-502, is the provision with respect to allowing anybody that owns 25 or more vehicles to obtain a self-insurance certificate if they can show substantial financial strength. And what's in that, in the express language in section 7-502, is to pay judgments against that person. And that's where the train went off the track a little bit. Now, you obtain that certificate by showing you can pay a judgment for your own liability. Whatever it might be, you've got sufficient assets to do that. At least you satisfy the director that you do. Now, when you get over to Chapter 9, we're not talking about the liability of the self-insured. Enterprise is not liable under any common law theory on this case. They are an innocent involver, if you will. The only liability we're talking about is the liability of the rental car driver. And so in that case, the legislature has said, if you want to be in the business, you've got to put something out there to protect the public. Some minimum level of protection. So naturally, if you've satisfied the Department of Insurance that you've got enough self-insurance to protect any judgment that might come against you, you've obviously shown that you can satisfy those minimum levels of protection that are set forth in Chapter 9. So it seems to me a very common sense statement. It's interesting, though, that there was a reference 40 years ago to 7-502 in Chapter 9 that was deleted. To me, it's just another showing that there are two separate liabilities that are in play. And respectively, that seems to us where the first district kind of conflated the two, and they really can't be. There's no argument here that, again, that Enterprise was negligent or that it was its agent or there was negligent entrustment or any other theory of liability against Enterprise. It's only what is Enterprise's duty to provide some protection for a suit against a driver who, in this case, was not insured. And that, to us, is clearly stated in Chapter 9. Chapter 7 doesn't deal with that liability. Mr. Griffin, did Enterprise assume a $2 million financial responsibility for third-party liability claims by listing the amount in the self-insurance application? Well, the self-insurance application has to demonstrate to the director that you have sufficient assets to pay judgments against you. And what they say in that application is that in cases where we're liable, we pay those claims where we are liable up to $2 million out of our own assets. So the answer is yes, up to $2 million. In a case where we're found liable for $2 million. And then could Enterprise limit the liability in the rental agreement? And if so, why wasn't the limitation set forth in the rental agreement if they wanted to limit their amount? Well, we would suggest that the limitation was set forth in the rental agreement. I mean, the rental agreement expressly says that in those cases where the owner in that Enterprise is obligated to extend its motor vehicle financial responsibility to the renter or third parties, the owner's obligation is limited to the applicable state financial responsibility amounts. What are those? Those are set forth in Chapter 9, 50, 100 if it's an insurance policy. For this case, it's $100,000 whether you're talking insurance policy, bond, or a self-insurance certificate. So our point is that the first district holding even violates our contract. But it certainly violates, we would suggest, the legislative intent. Again, putting aside the acquiescence rule and just looking at the obvious purpose and intent of the statute, which was to put some minimum level of protection out there for the public in the case of a driver like this that's not insured in a rental car, where Enterprise otherwise has no liability. Is there any sensible reason that they would have ever wanted to say, well, if you go option three, it's a whole new ballgame. You're liable to the moon now. I mean, would they ever do that in my sight? Just out of curiosity, back to the bond, Justice Carmar's question. Is the reason in the 50, 100 example that the 100 has to be posted is in case another claimant comes forward? Why do you see it that if there's one claimant, for example, that they have to post the 100? What the annotated code, they make a comment about that. What they really say is a bond can't be written per person. It has to be written in one amount, so they wrote it in the bigger amount. That's why they did it. That's just the mechanics of how a bond works. But a bond is an obligation signed by the rental car company, number one, and then there's a surety. If you think about it, the self-insured certificate is really the same thing except there's no surety. It's the self-insured itself saying what he says in the bond is we'll pay it up to. Now, Fellhauer said, well, there's no limitation like there is for writing bonds for self-insurance, so we think it's 50, 100. But, again, we don't have that issue here where everybody agrees our obligation is $100,000, and this is because there were three claimants. But, again, back to just the basic overall purpose of the intent of the statute and trying to figure out a rational reasoning and basis for the statute and to avoid anomalous results. Is there any conceivable reason, we can't think of any, why the legislature would have said, well, take similarly situated rental car companies, but if you go option three, you've got a whole different exposure, a whole different basis for liability than you do if you had gone option one or two. And, conversely, for members of the public that may be injured by rental cars, is there any sensible basis for the legislature to have said, well, if you get hit by a rental car that's covered by a self-insurance certificate, you've got unlimited liability to collect. But if you're hit by a rental car company that opted for one or two, you're capped in $100,000. Again, what would be the logic or the reason that they would not want to give equal treatment and at least consistent treatment under all three of these options? I mean, for all practical purposes, I mean, if that was a reasonable interpretation of the third option, I mean, it would never be used. It would be kind of a useless act or, as we always say, meaningless or pleasant. I mean, no rental car company would ever opt to use it, and I don't think we can infer that the legislature ever intended that. But if they did, that would bring us to a whole other issue that I don't think you're going to have to get to. But if you do read the third option as imposing unlimited liability on a rental car company, we respectfully submit that you run afoul of a federal statute called the Graves Amendment, which was enacted shortly after Fellhauer was decided. Fellhauer didn't have to deal with this issue. But it's consistent with it. Basically, what Graves says is, it preempts any state statute that imposes vicarious liability on a rental car company for injuries caused by a third person's operation of the rental vehicle, as long as the rental car company was not negligent or guilty of any other wrongdoing. It is stated in, we've cited all the cases that have been decided under it. The leading case is probably Garcia, the 11th Circuit case after Graves. States may not impose judgments against rental car companies based on the negligence of their lessees. Well, if you're going to say that that third option means that Enterprise, again, not a negligent entity, not a wrongdoer in any way, must pay the entire liability, all the damages caused by this negligent driver, that's vicarious liability. That's what it is. That's how we define it. We impose liability on you, you didn't do anything wrong, but we're going to make you pay for the person that did. So is your argument that the Graves Amendment would preclude any recovery? No, no, not at all. And why not? Because Graves has a savings clause for financial responsibility statutes. And if I can quote some of the cases that have been decided since Graves, they say that Graves allows statutes that denote a minimum level of compulsory insurance or its equivalent as a condition of licensure or regulation. That's in the Vargas case and the Rodriguez case. Garcia flushed that out a little bit and said the savings clause will apply to statutes that require a minimum level of coverage for the driver by an insurance policy, a bond, self-insurance, or any other financial equivalent. And that's consistent with Fellhauer's interpretation of the statute, that whether you choose the insurance policy or you choose the bond, whether you self-insure, they're basically financial equivalents, and those minimum levels of insurance have been recognized as falling within the savings clause of the Graves Amendment. Thank you, Counsel. May it please the Court. Good morning. I am Lisa Lane, and I represent Deshaun Nelson, the appellee in this matter, and I thank you for allowing me to argue this morning. Although the appellant has provided this Court with numerous principles of statutory construction, it alleges the 1st District violated in construing the Illinois Vehicle Code where the statutory language is clear and unambiguous, the statute must be given effect as written because statutory language is the best indicator of legislative intent. The plain language of the Illinois Vehicle Code in this instance provides absolutely no limit on the financial responsibility of self-insured rental cars, and it provides no indication that the legislature intended to impose any such limit. As a result, if an enterprise's liability is to be limited, it must be limited pursuant to the terms of the rental agreement. Well, the rental agreement states its responsibility is limited to the applicable minimum state financial responsibility amounts. However, again, we run into a problem because there are no minimum state financial responsibility amounts in the Illinois Vehicle Code applicable to self-insured rental car companies. Moreover, the provision relied upon enterprise to limit its liability in this case. Counsel, let me stop you and back you up. If it doesn't mean that, what do you think it means? The language in the rental agreement, what does it mean if it doesn't mean what Mr. Griffin argued? Well, I think it's confusing. I think it's confusing when there are different obligations that it could mean. It could be $50,000 per person in the instance of somebody that's insured. It could be $100,000 per person if the company satisfied a responsibility requirement by posting a bond. If nothing else, it's confusing, and it should be construed against the drafter, which is enterprise, and in favor of coverage under typical contract principles. But then you're not saying it's unlimited? I am saying it's unlimited because – I just want to be clear about my question. I mean precisely based on the language in the rental agreement because you said it should be based on the language in the rental agreement. Excuse me if I messed up. My position is that the Illinois Vehicle Code does not provide any maximum or any limit. So if it is to be limited, it would have to be by virtue of an enforceable, clear restriction in the rental agreement. In this case, there is none because the rental agreement purports to limit its responsibility to minimums provided by the law, and there are none in Illinois law that apply to a self-insured rental car company. That would make sense if they had purchased a policy of insurance or a bond. But in the context of self-insurance, there are no minimums applicable to them. In terms of protecting consumers, why would the legislature intend that some crash victims would get better coverage depending on what type of rental car company owns the car? I think the legislature clearly was intended in ensuring that the public is protected so that they have compensation for their injuries, and the legislature gave the rental car companies three choices. The rental car companies can choose whichever option they would like to satisfy the requirement. What I'm talking about is wouldn't a victim be better off if they got – if we accept what the appellate court ruled, they'd be better off to get hit by an uninsured driver that was driving an enterprise car than if they got hit by somebody that was driving some other variety of rental car company that did, in fact, cap their insurance. They could get up to $100,000 from them, but in this case, $600,000 from enterprise. Why would the legislature want to do that? Well, Your Honor, initially I think that it depends on the insurance coverage purchased by the rental car company. There's nothing in the statute that prohibits them from purchasing coverage in an amount that's greater than the minimum. We can see from the legislative history the enterprise did cite the last time that statutes were amended to increase financial responsibility laws, the rental car companies were already providing a greater amount of coverage than was required. That's not my point. I'm talking about – let's just assume everybody has minimum coverage. So if they post a bond or if they have insurance, they're only required to have $100,000. But if you're self-insured, the sky's the limit. So the effect of that is that someone that gets hit by an uninsured driver is better off if they get hit by somebody that's self-insured than they are if they get hit by somebody that's covered by insurance. Why in the world would that better protect consumers? Well, I think there are several reasons that the legislature would prefer that the rental car company purchase a policy of insurance or a bond rather than being self-insured. It protects in the event that the rental car company becomes insolvent and seeks protection under the bankruptcy code. It provides uninsured motorist coverage. If they purchase a policy of insurance, that is not required when they self-insure because insurance policies have to have uninsured motorist coverage. Therefore, it's providing more protection to people, which was clearly the intent of the legislature. And it's fair. The rental car companies that choose to be self-insured are saving the expense of purchasing insurance policies and bonds. Therefore, they should also have to assume the risk as associated with self-insurance. Doesn't the practicalities of the appellate court decision, following up in a slightly different way to Chief Justice Garmon's question, doesn't the grant of self-insurance as an option, isn't it rendered useless? What rental car company would ever utilize that option? Well, Your Honor, respectfully speaking, I don't think it's rendered useless. I think that it's a business decision that would be reached on a cost-benefit analysis, and nothing prevents the rental car company from purchasing insurance and only, you know, for example, in this case, Enterprise was self-insured up to $2 million. They then purchased insurance coverage for amounts in excess of that. They could still do that, and the insurance premiums would be substantially lower. And subject themselves to unlimited, unknowable, vicarious liability for its renters' negligence? Well, Your Honor. Do you think that would be a viable business decision? But they can insure for the excess, Your Honor, so I don't think that they're necessarily subjecting themselves to unknowable liability. They have a choice. Instead of being self-insured, they can certainly purchase the insurance policy or the bond, and it's our position that it's Enterprise's choice. They chose the self-insurance certificate. No, no. They made it. Just not to misunderstand, no question there's a choice. When we're trying to construe if the appellate court got it right as to the self-insurance choice, we have to look at, as Chief Justice Garmon was just indicating, why would they put that in as a choice if it was going to open up to unlimited amounts? Well, Your Honor, I think at this point we don't really have enough evidence in the record in a citation proceeding to know what the true economic consequences are. Clearly, Enterprise saved a lot of money by being self-insured. They may still be ahead by subjecting themselves to potential unlimited liability in those few cases where the judgments are going to be very large. It may be that in most instances the amounts of judgments are sufficiently low that there's still going to be a viable option for them. We really don't know on this record. Is the focus of the statute directed to the rental car companies or is it directed to providing a source of recovery for injured individuals by non-insured motorists? It's absolutely directed at protection of the public, Your Honor. The financial responsibility laws have always been enacted to protect the public and ensure that they were compensated for injuries sustained at the hands of uninsured motorists. There's not a scintilla of evidence in any legislative history or any case that said the financial responsibility laws are enacted to protect the rental car companies or the insurance companies or ensure that they're treated evenly. In fact, the courts have said the opposite. The financial responsibility laws are not for the purpose of protecting the rental car companies. The primary focus of the legislative intent was to protect the public, and they did so by ensuring at least a minimum. If the rental car company chooses to go over and above that, they can. They can purchase higher policies of insurance, and they can elect a self-insurance option, in which case their liability is not limited. It's been said that self-insurance is kind of an unusual term because there's no insurance at all. However, Fellhauer quoted from the New Jersey, I think, Supreme Court, that said that within the general imprecise and amorphous concept of self-insurance, there's one type of self-insurance which does have a legally recognized identity and a clearly defined consequence. That is, those designated as self-insurers within the context of compulsory liability insurance statutory mandates. So from that, could we infer that when the legislature refers to self-insurance in the statute, that's the same thing as having insurance, but you're just this insurer yourself? Well, I certainly think that's one interpretation that the New Jersey court adopted. However, in this case, the legislature certainly could have included the limitation in the provision addressing self-insurance, but it didn't. 7502 addresses the liability of a self-insured entity, of also self-insured entities with more than 25 vehicles, and that includes rental car companies. And it requires the self-insured rental car company to pay any judgment, and there would be no need for the legislature to impose a minimum financial responsibility limit because the rental car company has to satisfy the Department of Insurance that they're capable of paying any judgment. As a result, there was simply no need to address whether or not there was a minimum applicable to rental car companies that are self-insured. I don't think the legislature even considered it as their focus, and their concern was protection of the public, not insuring even obligations of rental car companies or worrying about whether or not it was going to be too expensive for them to operate to be self-insured. I mean, it's our position that the language of the Illinois Vehicle Code is clear and that it doesn't prohibit or it doesn't limit liability of the rental car company. Courts, under the guise of statutory construction, shouldn't insert requirements that don't exist, and they shouldn't impose limitations that are inconsistent with the plain language. It's our position that, in this case, the plain language provides no limitation, and it provides no minimum applicable amount that applies to self-insured rental cars. Therefore, it should be resolved at that level without further resort to aides of statutory construction. There's no basis in the statute or in the legislative history or any basis at all for Enterprise's position that the 7502 liability only applies to its direct negligence. If that were the case, we would have the observed result where judgments against drivers of rental cars or rental car companies have absolutely no obligation to pay judgments against the drivers of their rental cars, even though the legislature mandated that they prove to the Department of Insurance that they're financially responsible to pay those judgments. It creates an observed result and a gap. In this case, as we discussed, the primary purposes of financial responsibility laws are to protect the public by insuring payment of injuries. Nelson's a member of the public, injured through no fault of his own by the negligence of an uninsured driver of a rental car that Enterprise chose to self-insure. He was awarded a judgment of $600,000 by the Circuit Court of Cook County, which was the amount determined to be fair and reasonable for his damages. He's the member of the public that these financial responsibility laws are intended to protect. The $25,000 that Enterprise claims is the maximum financial responsibility it owes him after paying other expenses does not even come close to paying his damages. If Enterprise prevails after the liens are paid, pursuant to the Health Care Services Lien Act, he would receive at most about $7,500 on a $600,000 judgment. This court may properly consider not only the statutory language, but the purpose and necessity of the law the evils sought to be remedied, the goals to be achieved, and the consequences. If the court interprets the statutes as Nelson and the First District do, then Nelson will receive payment of the amount determined by the court that's fair and reasonable from which his medical bills will be paid. Other persons injured by uninsured rental car drivers will receive fair and reasonable compensation. Enterprise will continue to be a multibillion-dollar company. It will pay Mr. Nelson less than a third of its per-occurrence self-insured retention for third-party auto liability claims, and it may decide to purchase liability insurance or a bond instead of being self-insured in the future, which cost it will just pass along to its customers. And if this court finds that Enterprise may limit its liability in the rental agreement, it will simply change the rental agreement. If the court finds in favor of Enterprise, Nelson's only going to receive about a percent of the judgment he was awarded, and he'll likely be sued for the balance of his medical bills. Numerous persons will be in similar situations if they're involved in motor vehicle accidents with numerous people who are injured, and the rental car companies will simply continue to enjoy the cost-saving benefits of being self-insured. The interests of Nelson and the other driving public in this case far outweigh any interest Enterprise has in limited financial responsibility. Additionally, it's disingenuous to say that the law was well-settled in Illinois for a decade based on Fell Hour. The issue was considered for the first time in Fell Hour. It resulted in a split decision with a well-reasoned dissenting opinion by Justice Myerscough. In addition, this court granted a petition for leave to appeal, but the case was dismissed prior to this court having an opportunity to review. One can reasonably infer that Enterprise Rent-A-Car Midwest, an affiliate of Enterprise, settled the case to ensure that the decision will stand. Enterprise has enjoyed the benefits of the Fell Hour decision long enough, and it should be reversed as there is absolutely no indication in the Illinois vehicle code that the legislature intended to impose a maximum liability and limit the financial responsibility of self-insured rental car companies. Quickly, and it's all set forth in the brief, now is the language in the rental agreement unclear because of its reference to applicable state law minimums? It conditions payment of its legally mandated financial responsibility obligation upon compliance with the terms and conditions of the rental agreement by the renter and driver. Some of these terms and conditions violate Illinois law. It requires that the vehicle not be driven by a person that's impaired by alcohol or drugs, with or without a prescription, that it not be driven by a person other than additional authorized drivers, without Enterprise's prior written consent, which in this particular case, they stated on the face of the contract, no other driver permitted. They prohibited it from being driven other than states that were reflected in the rental agreement. These are the types of fraud-sweeping conditions that are against public policy in the state of Illinois and which nullify the protection that the state of Illinois mandates. Car rental agencies may not evade their financial responsibility by inserting a number of fraud-sweeping conditions. Additionally, the contractual provision that purports to limit its liability. Additionally, it's our position that allowing Enterprise to contractually limit its financial responsibility in the face of 9-101 and 7-502, which requires insurance to pay any judgment, violates Illinois law and public policy. Particularly true where Enterprise represented to the Department of Insurance in order to obtain its certificate of self-insurance, that it retained the risk of third-party auto liability claims up to $2 million, essentially receiving approval of its self-insurance plan. Under the John Deere Insurance Company v. Allstate case, as the dealership was bound by the certificate of insurance, which had a higher minimum than John Deere claimed it owed, Enterprise should be bound by the statements made in its financial documents submitted in its application for insurance. As a result, the entire provision in Section 7, purporting to limit Enterprise's financial responsibility, should be invalidated and stricken from the agreement. Finally, the Graves Amendment does not apply in this case, regardless of the amount Enterprise is financially responsible to pay. It simply prohibits States from imposing vicarious liability on rental car owners by reason of being the owner of the vehicle. Illinois does not impose liability by reason of being the owner of the vehicle. It imposes financial responsibility. Enterprise chose to comply with that financial responsibility by becoming self-insured. As a result, it is financially liable. It is not vicarious liability, but it's indemnity. If Enterprise's argument is accepted and it does violate the Graves Amendment, it would effectively preempt the entire self-insurance requirement or a permissible option, and all rental car companies would have to either purchase a policy of insurance or a bond. We ask that this Court affirm the decision of the First District and hold Enterprise responsible for payment of the entire judgment. Thank you, Counsel. Justice Carmeier, I think you asked about what does the legislature intend? Who are they trying to protect when they enact these minimum financial limits? Obviously, it is the members of the public, but they always do it in terms of a minimum requirement. You and I are required to carry, I think it's 2040, it just went up to 2550. So the legislature never said, well, because we want to protect the public, you pay everything, you have to insure everything. They never said that. So they made the limits here for rental car companies at least double what the ordinary limits would be. And they determined in their wisdom that that's the minimum level of protection that we want out there in the case where you have a rental car driver like this who's uninsured. And, again, it's just as Carmen pointed out, there's no conceivable rational reason they would have thought, well, that's good for option one and two, but we don't want that for option three. If you go that route, you're just liable for everything. And, again, she says that wouldn't implicate the Graves Amendment. That is Graves. That's what Graves holds. That's what all the cases that we cited in our brief, all of them involve situations of purported financial responsibility statutes that said if you don't post sufficient insurance, you're liable for more. And each of the courts said, no, you can't do it that way. You can't do that. You can't impose a liability on the rental car company. The innocent company did nothing wrong for the liability of this driver. That's what Graves says you can't do. And you can call it anything you want. But in this case, that's exactly what you'd be doing. You'd be taking all the liability of the driver for which, in common law, enterprise has no liability, placing it on enterprises. That's vicarious liability, and you can't do that under Graves. If I could just return, Justice Burke, to your question again about $2 million. Again, to be self-insured, to get the certificate, you have to say that you have assets to pay claims. And what they say is that for third-party liability claims in the U.S., we generally retain a portion of the risk of loss up to $2 million. That doesn't tell you they're liable in any case. That's just if we're liable. If liability is established against us, that's how we will pay it. Now, Chapter 7 deals with a self-insured who's liable for their own negligence. That's why there's no limits in Chapter 7. And again, I think this is where the First District went off the curve. There's no limits in Chapter 7 because it deals with judgments against the self-insured. The self-insured person, again, is enterprise. That's the only person in the certificates of insurance that's liable. But if you're talking about a judgment against yourself, it's never limited. Whatever. She argues in her brief, well, our position would be that enterprise, even for a judgment against itself or its own driver, would only be liable for 24. No. You're talking about your own liability. There's no cap except the judgment. Whatever it is, you, me, enterprise, whether you have insurance, no insurance, lots of insurance, your liability isn't capped. It's whatever the judgment is. Hopefully you've got enough insurance. Maybe you don't. But that's not what we're talking about again in Chapter 9. We're talking about the liability of the driver. And we're saying, the legislature's saying, okay, you're not liable for that driver, but you want to be in business here, we're going to make you do something. You've got to put something out there to get some protection. And what they decided was 50-100, if it's a policy, 100 if it's a bond. And we would respectfully submit that Feldhauer got absolutely correct. There's just no basis in the reason. I'd like to find a quote. We find common sense dictates that the legislature did not intend to treat self-insurers differently and expose them to unlimited liability when their counterparts, who chose to be covered by a traditional insurance policy, have only a $50,000 exposure. Again, here in our case it's $100,000 because they're clean. So it's just apples and oranges with all due respect to the 1st District. The 1st District admitted that, okay, Chapter 7 wouldn't apply on its face. And what they said was, well, but then that would mean there would be no coverage. You wouldn't have to pay anything. That's not an argument Enterprise ever made. They acknowledge they have self-insurance for a different liability over here in Chapter 9. Nothing to do with 7. That deals with their liability for their negligence for their acts. Over here we're talking about the driver. And we never claimed that because 7, the way it's written for us, means we don't have any obligation over here in 9. But the obligation isn't unlimited. It's the minimum level of protection that the legislature said we should have. She says, well, we've enjoyed Feldhauer long enough. Well, the legislature, if they didn't want us to have Feldhauer and continue to enjoy it, I respectfully submit we would have done something about it. And so for all those reasons, the obvious, we believe the obvious intent, the reasonable intent of the legislature, the legislature's acquiescence in Feldhauer over this last decade, the rental car contract itself says we should provide self-insurance up to the minimum limits required in the state by reason of the Graves Amendment, which we submit would prohibit the limited liability that plaintiffs seek to impose on Enterprise. For all those reasons, we respectfully request this Court to reverse the appellate court and to affirm the circuit court and reinstate the judgment of the senator in the circuit court. Thank you, Counsel. Case 118058, Deshaun Nelson v. Donald Artley, Enterprise Leasing Company of Chicago, as appellant, will be taken under advisement as Agenda 14. Mr. Griffin and Ms. Lange, thank you for your arguments today. You're excused at this time. Marshall, the Supreme Court stands adjourned.